[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by way of summons and complaint dated October 14, 1998 and returnable November 3, 1998 in which complaint the plaintiff sought a dissolution of the marriage, joint custody, temporary and permanent, child support, temporary and permanent, alimony, temporary and permanent, an allowance to prosecute, exclusive use and possession of the marital residence and equitable division of all personal property and such other relief as the court felt appropriate.
Certain motions accompanied the complaint.
The defendant appeared by counsel on November 6, 1998.
The defendant on November 5, 1998 had filed an answer and a cross complaint, and in the cross complaint sought a dissolution of the marriage, custody of the minor child, support for the minor child, exclusive use of the marital residence, a fair and equitable property settlement and such other orders as the court might deem appropriate.
Certain motions accompanied the cross complaint.
By motion dated November 4, 1998 the defendant requested the appointment of an attorney to represent the interest of the minor child and on December 21, 1998 the Court, Solomon, J., granted CT Page 15298 that request appointing Attorney Tammie Gildea as counsel for the minor child.
On November 23, 1998 a referral was made to Family Services concerning this matter, the same having been approved by the Court, Solomon, J., on November 23, 1998.
On February 19, 1999 a detailed parenting plan was executed by all of the parties in interest; the plaintiff mother, the defendant father and the attorney for the minor child. The parenting plan set forth in considerable detail the agreement between the parties with regard to the sharing of legal custody of the minor child noted in the complaint.
On July 6, 1999 the defendant was awarded exclusive use and possession of the family residence and the contents therein located at 158 Mount Pleasant Street by order of the Court, Hurley, J.
On August 30, 1999 a motion for employment/vocational evaluation was granted by the Court, Kenefick, J., requiring the plaintiff to submit to such an evaluation for the purpose of determining her employability and earning capacity.
On November 2, 1999 the plaintiff and the defendant with their respective counsel as well as the attorney for the minor child appeared before the court with their witnesses and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff, whose maiden name was Briggs, and whose prior married names were Van Sanford and Spellman, and the defendant were joined in marriage in Waterford on October 25, 1986.
Both of the parties have resided in the State of Connecticut for more than 12 months prior to the bringing of the complaint.
The plaintiff and the defendant have one minor child issue of the marriage whose name is Julia Pudlo, born February 19, 1987.
No other minor children have been born to the plaintiff wife from the date of the marriage to the present time.
Neither party has been the recipient of assistance from the CT Page 15299 State of Connecticut.
The marriage of the parties has irretrievably broken down with no reasonable prospect for reconciliation.
Until relatively recently the plaintiff was the recipient of Social Security Disability benefits.
The plaintiff participated in marriage counseling three years ago but a point in time was reached where she felt that counseling was no longer feasible or helpful.
The plaintiff has a Bachelor of Arts degree from Colorado State University, which was secured in 1976, and an associate's degree in data processing technology, which was secured in 1996.
The plaintiff is presently employed as a teacher's assistant by the Norwich Board of Education working in the field of remedial reading.
At prior times, the plaintiff has done office and secretarial work.
The plaintiff feels that her prospects in the near-term future may be better than what they have been in the past.
The plaintiff has applied for a new position which would materially increase her weekly compensation.
The plaintiff at some point in time was diagnosed as having a bipolar disorder and being on occasion manic depressive.
The plaintiff, mindful of these problems, was the recipient of Social Security Disability benefits for a period of approximately ten years receiving the last payment incident to that status in June of 1999. The termination of the Social Security Disability benefits occurred by virtue of her being successful in securing employment.
The plaintiff sees a psychiatrist at Backus Hospital approximately every three months.
The plaintiff is on a regimen of medication including Lithium, Zyprexa, Immopranine and Premarin, which is a hormone deficiency medication. CT Page 15300
The plaintiff feels that her medical condition now is fairly stable.
The plaintiff indicated that absent the taking of the medical pharmaceutical regimen that she would be sick and require hospitalization.
The plaintiff has health insurance presently incident to her employment as does the defendant.
It appears that the minor child Julia is in good health but sees a counselor.
The plaintiff among other requests asks for 40% of the defendant's vested pension benefits.
The plaintiff has started a pension plan incident to her present employment but is not yet vested.
The defendant and the minor child reside in the home premises known as 158 Mount Pleasant Street in Norwich.
There is a wide divergence of opinion with regard to what the plaintiff and the defendant feel the value of the marital home is at that address.
The plaintiff acknowledged a willingness to transfer her equity interest in the home and residence to the defendant.
The plaintiff requested that the court grant her sole possession of the savings bonds acquired by the defendant incident to his employment.
The defendant is employed in academic computing at Three Rivers Community Technical College and has been so employed for a period of at least the last five years. His duties include being a program analyst.
In April of 1999 the plaintiff removed herself from the Mount Pleasant Street residence and took up residence in Stonington.
The plaintiff unilaterally terminated the counseling in which the parties had been involved feeling that the same was serving no useful purpose. CT Page 15301
For some time, the plaintiff has not contributed anything toward the expenses of the marital home located on Mount Pleasant Street.
In addition to her other duties and talents, the plaintiff has done work in photography. On one occasion this Spring, she made $50.00, on another occasion involving two weddings in 1998 she made $400.00.
On occasion she works with a cousin, James Fetrow, in photographic endeavors.
In years prior to the marriage the plaintiff had taught art at educational institutions in 1977, 1978 and 1979.
After the birth of the child Julia, the parties agreed that the plaintiff would remain at home to look after the residence and the child.
The subject residence from the exhibits and testimony would indicate that it is in need of repair and refurbishment although apparently basically habitable.
Incident to her part-time photographic endeavors, the plaintiff has good photographic equipment including a Minolta and Nikon cameras.
The defendant husband has a master's degree in business administration.
The minor child Julia, issue of this marriage, is now age 12.
It appears that her health is good and she is matriculating in the seventh grade at Teacher's Memorial School in Norwich.
It appears that the child is doing well academically and is involved in outside activities such as Girl Scouts and the Rainbow Club.
The defendant is age 43 and first met the plaintiff wife in 1986.
The defendant was aware of her prior marital status. CT Page 15302
The defendant was aware of her bipolar disorder.
The defendant characterizes his wife as an intelligent woman capable of advancement in matters of employment.
The defendant has been employed at Three Rivers College and its predecessors for a period of more than 15 years, which educational institution is under the aegis or umbrella of the State Education Department.
In 1978 the defendant suffered an injury to his ankle in a motorcycle accident, which still troubles him and has back problems attributable to stress.
As recently as June and July of 1999, the defendant suffered back spasms where he must lie on the floor and is unable to properly function.
During the last year he has been at the emergency room at the local hospital six or seven times due to back problems.
He apparently has no other health issues.
During the marriage, in order to maintain the home and residence in some semblance of neatness, the defendant assisted with doing the laundry and cooked meals four or five times a week.
The defendant has apparently not been able to correct the numerous repairs that are needed at the marital home.
The defendant offered the testimony of Mr. Raymond Busch, a licensed realtor, with Lott Realty in Norwich.
Mr. Busch has been engaged in this type of work for a considerable period of time. As concerns the home premises on Mount Pleasant Street, he evaluated the market and this property. He indicated that the neighborhood would be characterized as fair, nearby homes were in average condition, that the square footage of the home was 900 square feet.
The witness Busch has never testified in a court of competent jurisdiction before these proceedings.
The witness indicated that he is not an appraiser. It appears CT Page 15303 that the subject premises in the 1989 decennial reassessment was assessed for $68,000.00. A new assessment has been undertaken; notice of which will be given to homeowners shortly.
The witness Busch valued the subject premises at $53,000.00, ± $2,000.00.
The subject residence was purchased by the parties in 1988 for and in consideration of $100,000.00.
The defendant has recently received notice of a new assessment for the premises, which he testified was to the assessed value of $47,300.00.
The notice of assessment itself was not offered as an exhibit.
There were apparently problems between the parties with regard to the housekeeping conduct by the plaintiff, matters of neatness and proper care of the premises frequently caused angry words and arguments between the parties.
It appears that problems between the parties became more serious over the last three years involving fights and arguments, many of which centered around the care and condition of the home, and the interior thereof.
The parties, five or six years ago, undertook a period of counseling but to no avail.
The defendant claimed that the plaintiff would follow him about the house and continue and press arguments and harsh words.
The defendant claims that the plaintiff on a rare occasion slapped the minor child or pushed her against the wall but no unbiased independent evidence of that was presented to the court.
The defendant is still in counseling and has endeavored to abide by the stipulation and parenting plan entered into on February 19, 1999.
The defendant asks the court to accept and implement the parenting plan noted above with the only requested change in Category 2(a) changing every Wednesday evening to every Monday evening because of scouting problems for the minor daughter. CT Page 15304
The minor child is engaged in a program of orthodontic work and has been for the last year and a half.
The defendant also, not too long ago, provided bifocals for vision problems for the child, this occurred last summer.
In addition to the existing first mortgage on the property, there is a mortgage incident to the down payment and the installation of a new heating system in the property. It is represented that the total debt is $74,000.00.
During most of the marriage the plaintiff was responsible for the financial receipts and disbursements and maintaining records incident thereto and running the checkbook.
The attorney for the minor child urges the court to accept the February 19, 1999 parenting agreement, indicated to the court that the child Julia is a good and tolerably well-adjusted child with a love for both parents.
From the financial affidavits and the exhibits the Court makes the following findings.
The plaintiff is employed by the Norwich Board of Education as a teacher's assistant.
Her weekly gross from that activity is $282.00; deductions for taxes, retirement, union dues, etc., result in a net weekly wage of $200.00.
The plaintiff's listed weekly expenses are represented to be $693.00.
The plaintiff has recently relocated herself into a larger living unit.
The plaintiff shows credit card and/or loan debt totaling $11,500.00.
The plaintiff values the 158 Mount Pleasant Street real estate at $85,000.00, mortgage indebtedness, $76,000.00, for an equity of $9,000.00.
The plaintiff owns a 1998 Nissan automobile, with a loan CT Page 15305 balance due thereon of $11,500.00.
The plaintiff has $344.00 in the bank and her pension plan is valued at $240.00. See also Defendant's Exhibit 1, the plaintiff's financial affidavit dated July 6, 1999, which is in substantial conformity with the one filed at time of trial.
The defendant's financial affidavit reflects gross weekly income of $1,038.00, deductions of $398.00 for taxes, union dues, etc., net weekly, $640.00. Claimed weekly expenses of $818.00. Debt for student loans or credit cards, $12,900.00.
The defendant values the Mount Pleasant Street premises at this time at $53,000.00 with mortgage debt of $74,000.00, for a minus equity of $21,000.00.
The defendant has a 1991 Chevrolet S10 pickup valued at $2,000.00 free and clear, a 1984 Honda valued at $700.00 free and clear. $103.00 in the Chelsea Groton checking account, savings bonds with a face value of $7,100.00.
With reference to Defendant's Exhibit 10, the appraisal by the witness Busch, the Court notes that the witness is not a licensed appraiser. He is merely a realtor. He is acquainted with and apparently a friend of the defendant.
His approach to valuation with regard to comparables in the Court's opinion was not as comprehensive as it should have been in terms of locating the comparables relative to the location of the subject property, checking the land records to determine the status of sales; i.e., whether foreclosures or other forced conditions, and although the statement appears to be lengthy and detailed, the Court has some misgivings with regard to accepting the value placed on the property by the witness Busch.
From Defendant's Exhibit 2 the Court makes the following observations and findings.
The joint income tax return of the parties for 1998 reflects that there is a notice from the Internal Revenue Service claiming the additional sum of $575.96 due and owing on said return.
In 1998 the plaintiff, according to W-2s, part of Defendant's Exhibit 2, received from the Norwich Public Schools wages to the amount of $10,232.11 and from other employment by an employer in CT Page 15306 Old Lyme, $993.00.
In 1998 the plaintiff received $969.00 from the Social Security Administration.
In 1996 the plaintiff received Social Security benefits in the amount of $5,250.00.
In 1995 benefits from the Social Security Administration were to the amount of $5,125.20.
In 1994 Social Security benefits in the amount of $4,981.20 were received by the plaintiff.
In 1993 from Social Security, $4,855.20 received.
In 1992 from Social Security, the plaintiff received $4,713.60.
In 1991 the plaintiff received from Social Security $4,547.10.
In 1990 the plaintiff received from Social Security $4,308.00.
These payments were all incident to her bipolar disorder and inability to work full time.
In addition to the foregoing from Defendant's Exhibit 2, the Court notes the plaintiff's letter to Dr. Michael Frechette, superintendent of schools for Norwich seeking the position of remedial reading assistant at Uncas Elementary School, and the accompanying listing of the plaintiff's educational attainments, abilities, teaching experience and matters of like nature.
From said exhibit, the letter from the plaintiff to Dr. Eric Covino at the Uncas Elementary School incident to her application for a position of head teacher for the After-School Early Literacy Center.
From said exhibit, see also plaintiff's letter to Mr. Michael Riley, superintendent of schools for Colchester incident to her academic attainments in applying for the position of art teacher, grades 9 through 12.
See also letter from the plaintiff to Mr. Christopher Contois director of the Norwich High School. CT Page 15307
See also the plaintiff's letter to Mr. Kent Weaver at Woodstock Academy incident to applying for a position as art teacher.
From said exhibit see photocopy of plaintiff's Associate Degree in Science from Three Rivers Community Technical College and the plaintiff's diploma from Colorado State University whereby she secured a degree as bachelor of arts, with a major in art.
From Defendant's Exhibit 9, a statement with regard to the physical condition of the property with various photos attached thereto, the Court notes that the general condition of the premises leaves much to be desired but on the other side of the coin, many and substantial improvements have been made to the property since the occupancy thereof by the parties to this action.
Defendant's Exhibit 7, a series of photographs showing the interior of the premises insofar as the element of neatness is concerned which admittedly leaves much to be desired but does not indicate any structural defects, vandalism or matters of like nature. Perhaps the most that can be said is a lack of organized housekeeping ability.
From Defendant's Exhibit 11, a statement from the State of Connecticut Retirement of Benefit Services Division. The Court notes from the same that the defendant if he were to terminate state service as of this time, would receive a retirement benefit effective January 1, 2011, the first of the month following his 55th birthday, the yearly benefit would be approximately $10,000.00 payable at $830.00 a month.
See Defendant's Exhibit 4, statement from the Norwich Public Schools as concerns the plaintiff indicating that she has been employed full time as a learning disabilities assistant since March 11, 1998.
In addition she receives some compensation for an after-school program titled Early Reading Program.
The health form verifies that this is the first marriage for the defendant husband, the third for the plaintiff wife. That the husband's education extended through five plus years on the college level and the wife, four. CT Page 15308
The Court notes that no testimony from a medical practitioner was offered nor any detailed written medical statement entered as an exhibit.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including without limitation C.G.S. §46b-56 et seq. regarding custody and visitation, C.G.S. §46b-82 regarding alimony, C.G.S. § 46b-84 regarding child support.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof and all exhibits.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the unequal financial situation that exists.
 Discussion
This is a marriage of 13 years. There is one minor child, age 12.
The plaintiff is age 48. The defendant is age 43.
The testimony reflects that the plaintiff received Social Security disability benefits for a long period of time incident to bipolar disorder and manic depressive problems that beset her.
Both of the parties are well educated. The plaintiff petitioner has a bachelor's degree in arts and an associate's degree in the computer oriented field.
The defendant husband has a master's degree. CT Page 15309
As noted in the findings, counseling was resorted to but did not solve the problems in this marriage.
The plaintiff, as again noted in the findings, has been on a relatively longstanding regimen of certain pharmacy in order to maintain a stable emotional and physical condition.
Things in the near-term future look somewhat better for the plaintiff. Her condition apparently having stabilized at this point.
The defendant at this juncture manifestly is more financially secure than the plaintiff, at least insofar as earnings are concerned. Perhaps the gap will be narrowed before too long by virtue of certain applications that are outstanding for the plaintiff which will be available to her after securing her certification for purposes of teaching in this state.
At what point in time the plaintiff will have secured a Connecticut Teacher's Certificate is a matter presently of conjecture. Admittedly the plaintiff's circumstances should be markedly improved once the certificate is secured and certain doors are opened for her in the Connecticut Public School System.
The Court has also considered the respective conduct of the parties insofar as the precipitating factors leading to the breakdown of the marital union.
Admittedly the plaintiff's housekeeping and home tending abilities left much to be desired. Her parenting qualifications do not appear to have been faulty and her conduct does not, to the Court, appear to have been an intentional course of conduct insofar as matters of poor housekeeping are concerned and maintenance of the home, but dictated perhaps in large measure by the mental problems which have beset her for a long period of time, reference being made to the long period during which the plaintiff received Social Security benefits.
Admittedly to the defendant's credit, he materially helped and assisted beyond what might usually be the case in cooking and care in the home.
Admittedly the plaintiff did unilaterally terminate the counseling and the Court is mindful of the fact that orders may be based on one's earning capacity rather than actual income. CT Page 15310
The arrangement with regard to the minor child residing with the defendant for part of the year and with the plaintiff for part of the year apparently has worked out fairly well. There is no indication that this split arrangement has been detrimental to the emotional welfare of the child.
Insofar as the minor child is concerned, both of the parties and the attorney for the minor child urge upon the court the acceptance of the February 19, 1999 parenting plan which will be set forth in detail hereinafter.
The Court enters the following orders.
Mindful of the joint request of the plaintiff and the defendant in which request the attorney for the minor child joins the Court will adopt with one modification the Parenting Plan of February 19, 1999 set forth herein.
"The parties shall share joint legal custody of the one minor child, Julia. From September until June, primary residence shall be with father. From June until September, primary residence shall be with mother.
During the academic year, mother shall exercise her parenting time as follows:
a) Every Monday evening.
b) Alternating weekends Friday — Monday.
c) Intervening weekends Friday — Saturday at noon.
During the summer father shall exercise his parenting time as follows:
a) Tuesday evening.
b) One Thursday per month for Rainbow Meeting.
c) Alternating weekends Friday — Monday.
d) Intervening weekends Friday — Saturday evening.
Every four weeks, or as often as necessary, the parents shall CT Page 15311 meet at a neutral location (i.e., Friendly's) to discuss issues relative to Julia.
The minor child shall remain in counseling with Barbara Grover until discharged.
Holidays
The parents shall alternate the following holidays:
Thanksgiving, Christmas Eve, Christmas, New Year's, Easter, Halloween, February 19.
Every Mother's Day and June 2 shall be with mother.
Every Father's Day and December 16 shall be with father.
The school year vacations (i.e., Christmas, February, April) shall be divided equally.
The plaintiff shall pay support to the defendant during the September through June period in the amount of $50.00 weekly, mindful of her present economic circumstances and past medical history.
In the event her circumstances improve by virtue of a new position and certification by the State, the issue may be readdressed.
During the period June through September the defendant shall pay the plaintiff support in the amount of $120.00 weekly.
The defendant shall provide medical and dental coverage for the minor child as available through his employment.
Uncovered and unreimbursed medical and dental expenses will be apportioned equally between the parties.
The defendant shall pay the plaintiff periodic alimony in the amount of $75.00 a week for a term of three years.
The alimony may be modifiable as to amount but not as to term.
Alimony to terminate earlier on the plaintiff's death or CT Page 15312 remarriage or cohabitation under the statute.
The plaintiff shall quitclaim her interest in the marital home situated at 158 Mount Pleasant Street and the defendant shall assume and agree to pay the indebtedness thereon and hold the plaintiff harmless.
Each party to be responsible for the debts shown on their respective financial affidavits.
The plaintiff shall be entitled to 40% of the defendant's accrued State of Connecticut pension by Quadro.
The U.S. Savings Bonds having a face value of $7,100.00 as shown on the defendant's affidavit shall be equally apportioned, 50% to each.
Each party to be responsible for their own attorney's fees.
The plaintiff and the defendant shall maintain any presently held life insurance and name the child as the irrevocable beneficiary during her minority.
The Court approves the statement presented by the attorney for the minor as to legal services in the total amount of $1,150.00, each party to be responsible for one-half thereof.
The marriage of the parties is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried.
Austin, JTR